UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAM ANTHONY TOCCO,

        Plaintiff,

v.

RICHMAN GREER ET AL.,

        Defendants.

_____/

Case No. 11-10310

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION [2]**

On January 4, 2011, Plaintiff Sam Anthony Tocco ("Tocco") filed a complaint in Wayne

County Circuit Court against Defendants Richman Greer Professional Association, a

Florida law firm, and John R. Whittles, one of the firm's shareholders and a Florida attorney

and citizen.  Plaintiff's complaint alleges three state-law claims:  fraudulent, negligent, and

innocent misrepresentation, all arising out of Defendants' client's promises to repay

$4,797,541.00 that Defendants' client, Joseph Zada, admitted he owed to Tocco in

connection with investment monies paid to Zada.  Defendants subsequently removed the

matter here, asserting diversity jurisdiction.  This matter is presently before the Court on

Defendants' motion to dismiss for lack of personal jurisdiction, brought pursuant to Federal

Rule of Civil Procedure 12(b)(2).  For the reasons stated below, Defendants' motion is

DENIED.

**I.    Facts**

    **A.  Plaintiff Tocco's Complaint**

Tocco's complaint against Joseph Zada's attorney and law firm alleges that, continuously throughout 2008 and 2009, Defendants made repeated oral and written false representations and promises that Zada had an extremely large inheritance that (1) Defendants had independently verified and confirmed was in place and was more than sufficient to pay the large sum of money Zada owed Tocco, (2) that all necessary legal documents had been executed and all financial arrangements had been completed for the money to be transferred to Tocco in full satisfaction of Zada's debt, (3) that Zada had transferred the money into Richman Greer's Client Trust Account, (4) that Defendants had explicit instructions from Zada to directly wire such funds to Tocco's bank account in full satisfaction of the undisputed debt Zada owed Tocco, and (5) that these funds would be released to Tocco "forthwith."  (Compl. at ¶¶ 38-40.)

Under his claim of fraudulent misrepresentation, Tocco alleges that (1) Defendants made these representations, knowing that they were false, and without any present intent of performance, and solely in an effort and with the intent to induce Tocco to sit idle and refrain from filing suit or taking other collection measures against Zada, and (2) concealed and hid material facts from Tocco in an effort to deceive and induce him to rely to his detriment and he did so.  (Compl. at ¶¶ 41, 45.)  Tocco further alleges that he reasonably relied on Defendants' promises and representations and refrained from filing suit or taking other collection measures against Zada while, unbeknownst to Tocco, Zada dissipated his considerable assets and eventually caused his business to be taken into receivership. (Compl. at ¶¶ 42, 46.)

Under his claim of negligent misrepresentation, Tocco further alleges that (1) Defendants' promises and representations were false and untrue, (2) Defendants knew or

2

should have known that its representations to Tocco were false and untrue, and (3) <u>despite their duty of care owed to Tocco</u>, and despite Tocco's reasonable and justifiable reliance, Defendants failed and neglected to exercise reasonable care in making representations regarding the payment of Zada's debt to Tocco, and caused Tocco damages in excess of $14 million.  (Compl. at ¶¶ 55-60 (emphasis added).)

Under his claim of innocent misrepresentation, Tocco also alleges that (1) the representations Defendants made to Tocco were false when made, were material, were made to induce Tocco from filing suit or taking other collection measures against Zada, and (2) Tocco reasonably relied to his substantial detriment on the misrepresentations and omissions made by Defendants and suffered damages in excess of $14 million.  (Compl. at ¶¶ 66-71.)

**B.  Plaintiff Tocco's Affidavit**

In his affidavit, Plaintiff Sam Tocco attests to the following.

**1.  Defendants' Representation of Tocco in Earlier, Unrelated Matter**

In 2005 or 2006, Defendants represented him in a Michigan-based lawsuit that was removed to federal court while Tocco was living in Michigan.  (Pl.'s Resp., Ex. A. Tocco Aff. ¶ 2.)  As explained in Defendant Whittles' affidavit, Defendants acted as local counsel for Tocco in 2004 in litigation in the United States District Court for the Southern District of Michigan solely to get the litigation transferred to federal court in Michigan.  Defendants accomplished that goal in Florida.  (Defs.' Mot., Ex. B, Whittles Aff. ¶ 19.)  In 2005, Defendant law firm sued Tocco in Florida and obtained a Florida judgment against Tocco for unpaid legal fees in connection with that 2004 litigation.  (*Id.* at ¶ 20.)

**2.  Defendants' Representation of Zada Re: Debt Owed to Tocco**

3

In 2008, Zada confirmed that he owed Tocco around $5 million in connection with investment monies Tocco had furnished to Zada, and Zada promised to pay Tocco the money he owed "forthwith."  Beginning in January 2008 and continuing for 18 months, Defendants frequently communicated with Tocco to coordinate and facilitate the repayment of Zada's debt to Tocco while Tocco was in Michigan.  These communications include letters, emails, faxes, texts, phone calls, and affidavits all sent to Tocco in Michigan. Defendants also called Tocco's Michigan counsel as well as his Michigan friends and family and their counsel to assure them that Zada's payment to Tocco was forthcoming. Defendant Whittle also insisted upon flying to Michigan for a face-to-face business meeting with Tocco at his Michigan counsel's office.  (Tocco Aff. at ¶¶ 3-4, 6, 15.)  Important here, Tocco avers that, during each communication, Defendants intentionally misrepresented and falsely promised that Zada's debt would be repaid to him "forthwith" in order to string Tocco along and induce him to forego legal action and collection proceedings against Zada; and, during the time that Tocco abstained from taking action against Zada, Zada surreptitiously dissipated his assets.  (*Id.* at ¶¶ 5, 7.)

Tocco provides specific dates that specific misrepresentations were made by Defendants to him while he was in Michigan.  (*Id.* at ¶¶ 8-12, 16, 18, 19, 29, 33, 34-36.) He avers that Defendants (1) informed him by phone calls, letters, and emails to Michigan that Zada had an extremely large inheritance forthcoming from which Zada had specifically authorized and instructed Defendants to wire $5 million to Tocco in Michigan to satisfy Zada's debt, (2) that all legal documents necessary to effect the money transfer were fully executed and that all the funds would be transferred within a week or sooner, (3) requested Tocco's Michigan address, (4) verified on March 24, 2008, that the matter would be

4

resolved very soon, (5) had personally and professionally vouched for Zada's personal and financial integrity, (6) assured Tocco continuously that, although payment was taking longer than anticipated, it would be wired immediately, (7) assured Tocco that they had independently verified that Zada was unquestionably the owner of more than sufficient funds to cover the debt, (8) telephoned four Michigan individuals as well as Tocco's counsel to assure them that Zada's repayment to Zada was forthcoming, (9) had Tocco provide them with his Michigan bank's address, his account number and routing number so Defendants could wire the money directly to his Michigan bank as promised, and (10) was told that the funds Zada owed Tocco would be wired to Michigan on August 20, 2008. (*Id.* at ¶¶ 8-18.)

On August 14, 2008, Defendant Whittles traveled to Michigan to personally meet with Tocco at his lawyer's office to discuss the status and timing of Zada's repayment of the undisputed debt owed to Tocco. At that meeting, Whittles told Tocco and his counsel that he had personally verified that $5 million of Zada's funds had officially been deposited into Defendant law firm's Client Trust Account specifically for Tocco's benefit, that the Trust Account funds would be wired to Tocco within one week, and that the one-week delay was to avoid substantial costs and penalties purportedly associated with an earlier payout, that Whittles himself had personally invested hundreds of thousands of dollars with Zada because Zada could be trusted, and that Whittles was willing to meet with all persons involved in Michigan and take them out for a "steak and a beer" since he was "100% positive of a payout within a week." (*Id.* at ¶¶ 19-25.)

The August 21, 2008 deadline came and went without payment. Defendants continued to communicate with Tocco while he was in Michigan with assurances that

5

Defendants had independently verified and were satisfied with the legitimacy of Zada's financial picture and his willingness to repay his debt to Tocco and that the funds had been transferred to the firm's account.  (*Id.* at ¶¶ 26-28.)

On August 28, 2008, there was still no payment.  Instead Defendant Whittles executed and delivered to Zada in Michigan a sworn and notarized affidavit stating that, as part of his representation of Zada, he was "coordinating payment . . . of a substantial financial obligation to Sam Tocco," that Zada's "payment is undisputed," and that Defendants expected to make payment "in a matter of days or less."  (*Id.* at ¶ 29.)

Throughout September 2008, Defendant Whittles repeatedly contacted Tocco in Michigan and urged him to remain patient and refrain from filing suit against Zada inasmuch as payment was right around the corner and litigation could hinder Zada's delivery of the funds.  Defendants continued to promise and confirm imminent payment. (*Id.* at ¶¶ 30-31.) In reliance on Defendants' representations, Tocco refrained from taking legal action and continued to invest additional money with Zada and continued to vouch for Zada to his friends and family in Michigan who also continued to invest money with Zada.  (*Id.* at 32.)

On October 1, 2008, Defendant Whittles exchanged numerous text messages with Tocco in Michigan.  Whittles represented that Defendants were awaiting confirmation of the wire transfer and would transfer $5 million into Tocco's bank account forthwith.  (*Id.* at ¶ 33.)

On October 6, 2008, Defendants emailed Tocco in Michigan representing that "we are absolutely expecting confirmation and funds tomorrow," and Whittles sent a letter on the firm's letterhead to Tocco's Michigan residence stating, "I have been advised that I will have

confirmation of a wire transfer tomorrow morning, October 7, 2008 and will be able to wire funds shortly thereafter."  (*Id.* at ¶¶ 34-35.)

On October 7, 2008, Defendant Whittles sent Tocco an email telling him that "we might get pushed into tomorrow."  (*Id.* at ¶ 36.)

For the next several weeks, Defendants told Tocco that payment was imminent, and Tocco expressed his disappointment, anxiety and concerns to Defendants.  (*Id.* at ¶¶ 37-38.)

On November 21, 2008, based on Defendants' continued assurances that full payment was right around the corner, Tocco and Zada executed an Acknowledgment of Settlement and Mutual General Release with Zada promising to pay Tocco $4,797,541 "promptly" in exchange for Tocco's forbearance of suit.  (*Id.* at ¶ 39.)

On December 17, 2008, Tocco emailed Defendant Whittles in Florida advising Defendants that he was in a dire financial state as a result of Zada's failure to pay and requested another letter from Defendants indicating the status of Zada's payment and reminding Defendants to "keep[] in mind that I will need this for the State [of Michigan]." (*Id.* at ¶ 40.)

On December 23, 2008, Defendant Whittles sent a letter on Defendant law firm's letterhead to Tocco's home in Michigan stating as follows:

> Mr. Zada apologizes for the delay in payment, which delay was caused by circumstances beyond his control.  Mr. Zada re-acknowledges his debt to you and I am told that my trust account will be funded to facilitate your payment on or before January 5, 2009.  I will initiate a wire transfer to you immediately upon my receipt of funds and I will call you to confirm that transfer.

> Mr. Zada would like to thank you for your patience, especially considering that the delays we have experienced are in no way attributable to you.  We look forward to resolving this matter immediately.

7

(*Id.* at ¶ 41.)  Around this time, Defendant Whittles also spoke to the Michigan counsel of a friend of Tocco's and assured him that the funds were present in Defendant law firm's Client Trust Account and were currently being domesticated.  (*Id.* at ¶ 42.)

The January 5, 2009 deadline came and went without payment to Tocco.

On March 5, 2009, Zada and Tocco executed a Payment, Release, Standstill and Confidentiality Agreement.  Under its terms, Zada agreed to pay $4,797,541 to Tocco on April 20, 2009.  If Zada failed to do so, the Agreement provided that a Consent Judgment in Tocco's favor and against Zada in the amount of $4,797,541 would be filed in Wayne County Circuit Court.  The Agreement lists a Michigan address for Zada and specifies that Michigan is the forum state and Michigan law the governing law.  (*Id.* at ¶ 44.)

On July 28, 2009, a Consent Judgment was entered in Wayne County Circuit Court against Zada and in Tocco's favor for the amount of $4,797,541 plus costs, attorney fees, and interest.  (*Id.* at ¶ 46.)  Even after entry of the Consent Judgment, Defendant Whittles assured Tocco's Michigan counsel in phone conversations that the funds were sitting in Defendant law firm's client trust account and would be wired soon.  (*Id.* at ¶ 47.)

After the Consent Judgment was entered, Tocco learned that Zada had completely dissipated his considerable assets, that any remaining business assets of his had been thrown into receivership, that Defendant law firm had no funds of Zada's in its Client Trust Account, and that the Consent Judgment was completely uncollectible.  (*Id.* at ¶ 48.)

### C.  Defendants Affidavits

Defendants provide the Court with two affidavits; one from the President of Richman Greer Professional Corporation, Gerald F. Richman, and the other from Attorney John Whittles.  Defendant law firm's affidavit provides as follows.

Defendant law firm is a Florida corporation that only has offices in Florida and has no Michigan employees or Michigan partner/shareholders.  Between 2003 and 2009, it represented five Michigan residents, including Plaintiff Tocco, and 100% of the work was done in Florida and regarded either Florida litigation work or Florida property/estate interests.  The law firm has not consented to be subject to the jurisdiction of any Michigan court, has no real or tangible property in Michigan, has never contracted to insure any person, property, or risk in Michigan; has never contracted to provide legal services in Michigan; has no contracts with any person, partnership, or corporation in Michigan; has never commenced any litigation in Michigan's courts; has never engaged in any advertisement specifically directed to the State of Michigan, and the purpose of any contacts that Defendant law firm's employees or representatives may have had with Michigan residents has been because of its client's purposes and not those of Defendant law firm. (Defs.' Mot, Richman Aff. at ¶¶ 5-15, 18-21.)  Defendant law firm's representation of Tocco in 2004 was simply to have litigation filed in federal court in Florida transferred to federal court in Michigan, and its contacts with Tocco all originated from Florida.  (*Id.* at ¶ 16.)  Its lawsuit against Tocco for unpaid legal fees was filed in Florida and resulted in a Florida judgment against Tocco.  (*Id.* at ¶ 17.)

Defendant law firm's representation of Zada began in 2002.  Defendant was retained to represent Zada's legal interests in Florida and these interests were unrelated to Tocco. It is Defendant's belief that at all times they provided Zada with legal representation, he was

9

a resident of Florida.  (*Id.* at ¶¶ 22-23.)  Most of the communication between Defendant law firm's employees and representatives and Tocco was initiated by Tocco and directed to Defendants in Florida and all communications from Defendants were made on Zada's behalf and at his request.  (*Id.* at ¶¶ 24-27.)  Defendant law firm's representative, Defendant Whittles, did personally attend an August 14, 2008 meeting in Michigan regarding Zada's debt owed to Tocco.  However, it took place at Mr. Zada's insistence and occurred in Michigan solely because Tocco and Zada were both in Michigan.  (*Id.* at ¶¶ 28-29.)

Defendant Whittles avers the following.  He is an attorney licensed to practice law in the State of Florida only and is not and has never been licensed to practice law in Michigan. He is a resident of Florida and has never been domiciled in Michigan.  He does not now nor has he ever owned, possessed, or used any real or tangible property situated in Michigan. He has never contracted to insure a person, property, or risk located in Michigan, and he has never entered into a contract or agreement to provide legal services in Michigan.  He has never acted as a director, manager, trustee, or other officer of a corporation incorporated under Michigan law or having its principal place of business in Michigan. Moreover, he has never maintained a domicile in Michigan while subject to a marital or family relationship which is the basis of a claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.  Defendant Whittles never commenced any litigation in Michigan, never advertised in Michigan, and his only contacts with Michigan residents was random and occurred solely and exclusively as a result of legal representation of others.  (Defs.' Mot., Ex. 2, Whittles Aff. ¶¶ 2-4, 7-11, 14-18, 21-25.)

10

As to his representation of Plaintiff Tocco, Defendant Whittles avers the following. In 2004, Defendant law firm acted as local counsel for Tocco in litigation in federal court in Florida solely to have that litigation transferred to federal court in Michigan. During the course of that representation, all contacts with Tocco emanated from Florida and Defendants did not travel to Michigan. In 2005, Defendant law firm sued Tocco for unpaid attorney fees in Florida and obtained a Florida judgment against him. (*Id.* at ¶¶ 19-20.)

As to his representation of Joseph Zada, Defendant Whittles avers that he and Defendant law firm were first retained to represent Zada in matters unrelated to this litigation. Defendant Whittles was retained to represent Zada in matters related to this litigation in January 2008. At all times relevant, Defendants believed that Zada was a legal resident of Florida. Defendant Whittles' contacts with Tocco were all on behalf of Zada and at Zada's request and most were initiated by Tocco calling Whittles' office in Florida or his cell phone while Whittles was in Florida. Defendant Whittles admits that he met with Tocco at the Michigan office of Tocco's attorney on August 14, 2008, but the meeting was at Zada's insistence, not his, and took place in Michigan because both Zada and Tocco were in Michigan at the time. He was in Michigan for less than five hours, and the meeting lasted less than one hour. (*Id.* at ¶¶ 27-37.)

## II.   Standard of Review

Plaintiff has the burden of establishing this Court's personal jurisdiction over Defendants. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). Because the Court is not conducting an evidentiary hearing on the issue of personal jurisdiction, Plaintiff "need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Plaintiff can satisfy this burden by

11

"establishing with reasonable particularity sufficient contacts between [Defendants] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal quotation marks and citation omitted).

In reviewing a motion to dismiss brought pursuant to Rule 12(b)(2), the Court views the pleadings and affidavits in the light most favorable to Plaintiff. *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). The Court "will not consider facts proffered by the defendant that conflict with those offered by [the plaintiff]." *Neogen*, 282 F.3d at 887 (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

## III. Analysis

To establish personal jurisdiction in this diversity action, Plaintiff must show that the Court's exercise of personal jurisdiction is both (1) authorized by Michigan law, "the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen*, 282 F.3d at 888. If Plaintiff can show that Defendants' acts fall within a provision of Michigan's long-arm statute, then Michigan law allows for the exercise of personal jurisdiction as far as due process permits. *Green v. Wilson*, 565 N.W.2d 813, 816 (Mich. 1997). In other words, once Plaintiff establishes that jurisdiction is proper under a provision of the long-arm statute, the state law and constitutional inquiries merge. *See Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 742 (E.D. Mich. 2004).

It is Defendants' position that this Court lacks personal jurisdiction over them. Plaintiff disagrees, arguing that limited personal jurisdiction over Defendants is proper under Michigan's long-arm statute and is constitutionally permissible under the Due Process

12

Clause of the Fourteenth Amendment.  The Court begins its analysis by examining Michigan's long-arm statute.

### A. Michigan's Long-Arm Statute

#### 1. Corporate Defendant Richman Greer Professional Association

Defendant Richman Greer is a corporation incorporated under Florida laws and has offices only in Florida.  (Defs.' Mot., Ex. 1, G. Richman Aff. ¶¶ 5, 7.)  Michigan's long-arm statute provides that if "any of the following relationships between a corporation or its agent and the state" exists, then the court has limited personal jurisdiction over that non-resident corporation in claims arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich. Comp. Laws § 600.715.

#### 2. Individual Defendant John Whittles

Defendant John Whittles is an attorney licensed to practice law in the State of Florida only, is not and has never been licensed to practice law in Michigan, is a resident of Florida and has never been domiciled in Michigan. (Defs.' Mot., Ex. 2, Whittles Aff. ¶¶ 2-4, 7-11, 14-18.)

13

Michigan's long-arm statute provides for limited jurisdiction over individuals in claims arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principle place of business within the state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

Mich. Comp. Laws § 600.705.

### 3.  Defendants are Subject to Limited Personal Jurisdiction Under Statute

Plaintiff has demonstrated that limited personal jurisdiction exists over both the corporate and individual Defendants because Plaintiff's claims against Defendants arise from "[t]he transaction of any business within the state" and "[t]he doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort."  Mich. Comp. Laws §§ 600.715(1), (2), 600.705(1), (2).  It is undisputed that Defendant Whittles is a shareholder of and acted as an agent of Defendant Richman Greer.  (Whittles Aff. ¶ 9.)  Moreover, as alleged in Plaintiff's complaint and attested to in his affidavit, the consequences of Defendants' alleged fraudulent, negligent, and innocent

14

misrepresentations are felt here in Michigan by Plaintiff.  *See W. H. Froh, Inc. v. Domanski*, 651 N.W.2d 470, 477 (Mich. Ct. App. 2002) (observing that limited personal jurisdiction is proper "if either the tortious conduct or the injury" occurred in Michigan).

As Plaintiff alleges in his complaint and avers in his affidavit, Defendants contacted Tocco in Michigan on a protracted basis in 2008 and 2009 with regard to a debt owed to Tocco, a Michigan resident, and incurred in Michigan by Defendants' client Zada, who is also a Michigan resident.  Moreover, Defendant Whittles, as Zada's counsel and as an agent of Defendant law firm, came to the Michigan office of Tocco's Michigan counsel and conducted the type of business that attorneys and law firms conduct -- legal representation of their clients.  More importantly, as Tocco alleges and avers, Defendants made repeated fraudulent representations and false promises to Tocco, to his Michigan counsel, and to his Michigan friends and family and their Michigan counsel via letters, faxes, emails, sworn affidavits, phone calls and texts -- all directed to Michigan -- and during the meeting where Defendant Whittles was present in Michigan.  Because Defendants' Michigan contacts give rise to Tocco's tort claims of fraudulent, negligent and innocent misrepresentation, this Court concludes that Plaintiff has made a prima facie showing that this Court has limited personal jurisdiction over Defendants under Michigan's long-arm statute.

This does not end the Court's inquiry.  It now considers Plaintiff Tocco's argument that the exercise of limited jurisdiction over Defendants comports with the due process clause.

### B.  Due Process

Even though limited personal jurisdiction is proper under Michigan's long-arm statute, Plaintiff Tocco must also show that jurisdiction is constitutionally permissible.  The Sixth Circuit has established that the due process determination entails a three-part inquiry:

15

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).  Plaintiff Tocco argues that personal jurisdiction is consistent with due process because all three elements are satisfied.  Defendants argue the opposite.  The Court analyzes each factor, beginning with purposeful availment.

### 1.  Purposeful Availment

To be subject to personal jurisdiction, a defendant must "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'"  *Neogen*, 282 F.3d at 889 (quoting *Burger King*, 471 U.S. at 475).  Purposeful availment is satisfied where "the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state."  *Air Prod. and Controls*, 503 F.3d at 551 (quoting *Burger King*, 471 U.S. at 475) (emphasis in original).  A defendant's physical presence in the state is not required.  *Air Prod. and Controls*, 503 F.3d at 551.  As the Supreme Court explained in *Burger King*, "the purposeful availment requirement addresses the protection provided

16

by the Due Process Clause of an individual's liberty interest in not being subjected to binding judgments of a foreign jurisdiction absent 'fair warning' that its activity may bring them within the authority of those courts." *Salom Enter., LLC v. TS Trim Indus., Inc.*, 464 F. Supp. 2d 676, 684 (E.D. Mich. 2006) (citing *Burger King*, 471 U.S. at 471-72). "In the context of limited personal jurisdiction, this 'fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* (quoting *Burger King*, 471 U.S. at 472).

Here, considering the affidavits and pleadings in the light most favorable to Plaintiff, the Court concludes that Plaintiff has adequately shown that Defendants did purposefully avail themselves of the privilege of transacting business within the state and of causing a consequence within Michigan. Plaintiff Tocco relies on Defendants' numerous letters, faxes, emails, sworn affidavits, phone calls and texts -- all directed to Michigan -- and a face-to-face meeting held in Michigan to establish purposeful availment. Tocco avers that it was Defendants who insisted on the face-to-face meeting in Michigan, not him. Tocco also alleges and avers that Defendants made fraudulent misrepresentations and false promises in their communications directed to Tocco in Michigan, to his Michigan counsel, to his Michigan family and friends and to their Michigan counsel as well as during the meeting held in Michigan. In sum, considering the allegations in Plaintiff Tocco's complaint and the averments in his affidavit, Defendants knew that the "brunt of the harm" of their tortious conduct would occur in Michigan. *Air Prods. and Controls*, 503 F.3d at 553. Thus, the same allegations that satisfy Mich. Comp. Laws § 600.715 (1) and (2) and Mich. Comp. Laws § 600.705(1) and (2) also satisfy the "purposeful availment" prong of the

constitutional requirement.  *See Serras v. First Tenn. Bank Nat'l Assoc.*, 875 F.2d 1212, 1217 (6th Cir. 1989).

The decisions Defendants rely upon for a contrary result are readily distinguished. Unlike Plaintiff Tocco here, the plaintiffs in *Urbanco, Inc. v. Wood, Lucksinger, & Epstein*, No. G89-30816 CA, 1990 U.S. Dist. LEXIS 7646, *1 (W.D. Mich. June 14, 1990),  were former clients of the defendant attorney and law firm who were suing their former California attorney and California law firm for claims arising out of that firm's billing procedures and representation of them as local counsel in a California lawsuit.  More importantly, in *Urbanco*, unlike here, the defendant attorney and defendant law firm served only as local counsel for the plaintiffs in that California litigation.  The defendants in *Urbanco*, unlike here, did not travel to Michigan and their contacts with Michigan "were incidental to" their "representation of plaintiffs in California," and "were not on-going, far-reaching, continuous, or substantial."  *Id.* at **11-12.   Unlike here, the conduct giving rise to the plaintiffs' malpractice-related claims in *Urbanco* arose "from performance of legal services in California and fees charged for such services.  *Id.* at *12.  The *Urbanco* court concluded that it would not be reasonable to allow the exercise of personal jurisdiction against the plaintiffs' former counsel when the "client upon his return to his own home decide[s] to sue at home for services sought by himself abroad."  *Id.* at *14.  Unlike *Urbanco*, Plaintiff here is suing his adversary's counsel and law firm based on alleged misrepresentations made by Defendants during a face-to-face meeting in Michigan and in numerous other communications directed to him and others in Michigan.

Similarly, in *Alexander-Schauss v. Lew*, 351 F. Supp. 2d 635, 636 (E.D. Mich. 2004), a Michigan plaintiff filed a malpractice action in Michigan against her former Illinois divorce

18

attorney whom she had hired to handle her divorce proceedings in that state.  The court determined that it lacked personal jurisdiction over the defendant attorney because the plaintiff's action arose "from performance of legal services solely in the State of Illinois." *Id.* at 639.  Moreover, the defendant attorney's "receipt of a check drawn from a Michigan account was incidental to" the plaintiff's representation and insufficient to allow the exercise of personal jurisdiction over the defendant attorney.  *Id.*  Unlike in *Alexander-Schauss*, Plaintiff's claims of fraudulent, negligent, and innocent misrepresentation do arise from Defendants' Michigan contacts described above.

Defendants' reliance on *Doebler v. Stadium Prods. Ltd.*, 91 F.R.D. 211 (W.D. Mich. 1981), is also misplaced.  The plaintiff in *Doebler* filed a lawsuit in Michigan alleging that the defendant, an attorney practicing law in Illinois, breached a duty to advise the plaintiff about stock of an Illinois company that was issued to the plaintiff.  The *Doebler* court concluded that it could not exercise personal jurisdiction over the defendant attorney because his "services were performed outside Michigan on behalf of an Illinois corporation based on personal contacts occurring only in Illinois and initiated at the request of an Illinois property-owner."  *Id.* at 215.  Unlike here, in *Doebler*, there is no allegation or averment that the defendant attorney performed any legal services in Michigan.  Unlike here, in *Doebler*, the "generating cause" of the plaintiff's litigation against the defendant Illinois attorney was that plaintiff's "desire to do business in Illinois," and the defendant attorney merely mailed a few letters and "placed a few phone calls to Michigan to follow through on an obligation undertaken in Illinois to perform services in Illinois."  *Id.*

Here, unlike the decisions Defendants rely upon, Defendants did have contact with Plaintiff Tocco in Michigan on a protracted basis with regard to a debt incurred in Michigan

19

by a Michigan resident, and owed to a Michigan resident.  Unlike the above decisions, Plaintiff Tocco did not seek out Defendants.  Rather, it was Defendants who reached out to Plaintiff and told him that they were hired to coordinate and facilitate the prompt repayment of Zada's undisputed debt to Tocco.  Plaintiff avers that it is the fraudulent misrepresentations and false promises that occurred during Defendants' substantial contacts with him in Michigan that form the basis of this action.

### 2.  Plaintiff's Claims Arise from Defendants' Contacts with Michigan

As to the second prong of the due process determination, the Sixth Circuit has articulated the appropriate standard in various ways, i.e., "whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts," or "whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state."  *Air Prods. and Controls*, 503 F.3d at 553 (internal quotation marks and citations omitted).  The standard is a lenient one.  *Id.*  As discussed above, Plaintiff's claims of fraudulent, negligent, and innocent misrepresentation are "related to," and "connected with" Defendants contacts with Michigan.    Plaintiff has "averred positive acts of misrepresentation in Michigan" both in the face-to-face meeting held in Michigan and in the numerous other communications directed to Plaintiff in Michigan.  *Serras*, 875 F.2d at 1218 (finding allegations of fraudulent misrepresentations in phone calls and a Michigan visit sufficient to satisfy this second prong).

### 3.  Exercise of Limited Personal Jurisdiction Over Defendants is Reasonable

As to the third prong of the due process determination, the Court considers whether "the acts of the defendant or consequences caused by defendant . . . have a substantial enough connection with the forum state to make the exercise of jurisdiction over the

defendant reasonable." *Air Prods. and Controls*, 503 F.3d at 554 (internal quotation marks and citation omitted). It is well-established that, "where, as here, the first two criterion are met, an inference of reasonableness arises and only the unusual case will not meet this third criteria." *Id.* (internal quotation marks and citations omitted). Factors considered by the Court in determining the reasonableness inquiry include:

> (1) the burden on the defendant;
> (2) the interest of the forum state;
> (3) the plaintiff's interest in obtaining relief; and
> (4) other states' interest in securing the most efficient resolution of the policy.

*Id.* at 554-55.

Any burden on Defendants to travel to Michigan, the forum state, is outweighed by this State's interest in affording one of its citizens protection under Michigan law for the claims of fraudulent misrepresentation asserted here. Contrary to Defendants' arguments, Plaintiff's claim of fraudulent misrepresentation is not precluded under Michigan law. Unlike claims for negligent misrepresentation, which "requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the replying party a duty of care," and claims for silent fraud, which requires a plaintiff to show that the defendant made "some type of representation that was false or misleading and that there was a legal or equitable duty of disclosure," *Coran v. Century Title Agency, LLC*, No 293540, 2010 WL 4679498, *5 (Mich. Ct. App. Nov. 18, 2010) (internal quotes and citations omitted), a claim for fraudulent misrepresentation has no such duty element.

> To prove a claim of fraudulent misrepresentation, or common-law fraud, a plaintiff must establish that: (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without

21

knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury.

*Id.* Unlike decisions holding that, with respect to negligence claims, an attorney owes no duty of care to an adverse party, Plaintiff's claim here is one of intentional fraud; and attorneys are not shielded from liability for their fraudulent actions. *See Rivet v. State Farm Mut. Auto. Ins. Co.*, 316 F. App'x 440, 446 (6th Cir. 2009); *see also Trepel v. Pontiac Osteopathic Hosp.*, 354 N.W.2d 341, 350 (Mich. Ct. App. 1984) (observing that although "[i]t is true that attorneys owe no duty of care to parties opposing their client and may not therefore be sued in negligence by the opposing party for attorney representation of a client," that "same rationale does not apply in non-negligence actions, where elements other than duty of care are required."). Under the circumstances presented here, the exercise of limited personal jurisdiction over Defendants is reasonable.

Because all three prongs of the due process inquiry are satisfied, this Court finds that personal jurisdiction over Defendants is consistent with due process.

## III. Conclusion

For the above-stated reasons, Defendants' motion to dismiss for lack of personal jurisdiction is DENIED.


                    s/Nancy G. Edmunds_____
                    Nancy G. Edmunds
                    United States District Judge

Dated: March 31, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2011, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager